PEOPLE v. CLEMENTE.

(Supreme Court, Appellate Division, First Department. July 7, 1911.)

1. HOMICIDE (§ 74*)—MANSLAUGHTER—WHAT CONSTITUTES.
    Where a blaster who had been working in soft rock put in the same amount of powder for a blast in hard rock, and the blast threw rocks to a great distance in that vicinity, killing one person, the blaster's negligence constituted manslaughter.
    [Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 97–101; Dec. Dig. § 74.*]

2. CRIMINAL LAW (§ 472*)—EVIDENCE—OPINION EVIDENCE—EXPERT TESTIMONY.
    In a prosecution for manslaughter, the amount of powder used in holes for blasting is a proper subject for expert testimony.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1059; Dec. Dig. § 472.*]

3. CRIMINAL LAW (§ 485*) — EVIDENCE—OPINION EVIDENCE—HYPOTHETICAL QUESTIONS.
    In a prosecution against one whose negligence in blasting caused the death of a person in the vicinity, a hypothetical question to an expert witness as to the amount of powder contained in a hole 12 feet deep, 2½ inches in diameter at the bottom, and 3½ inches at the top, containing from the bottom up 36 inches of powder, 4 feet of tamping, together with 8 inches of powder and additional tamping, was proper.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1073, 1074; Dec. Dig. § 485.*]

4. CRIMINAL LAW (§ 696*)—EVIDENCE—OPINION EVIDENCE.
    Where an expert, in answering a hypothetical question relied upon personal observations not already testified to, accused may have his response stricken out.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1639–1644; Dec. Dig. §. 696.*]

5. CRIMINAL LAW (§ 485*) — EVIDENCE—OPINION EVIDENCE — HYPOTHETICAL QUESTION.
    In a prosecution for manslaughter for negligence in blasting, where one hypothetical question specified the diameter and depth of a blast hole, a subsequent question may refer to such hole without stating the dimensions.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1073, 1074; Dec. Dig. § 485.*]

6. CRIMINAL LAW (§ 470*)—EVIDENCE—OPINION EVIDENCE.
    In a prosecution for manslaughter in negligently conducting blasting operations, the admission of expert testimony as to the amount of powder used in a blast hole and as to the amount that should be used, was not an invasion of the province of the jury.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1059; Dec. Dig. § 470.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. HOMICIDE (§ 171*)—EVIDENCE—ADMISSIBILITY.

 In a prosecution for manslaughter arising out of negligence in conducting blasting operations, rules 61 and 62 of the Explosives Commission, which were in force before the defendant, who was a licensed blaster, did the blasting, are admissible.

 [Ed. Note.—For other cases, see Homicide, Dec. Dig. § 171.*]

Appeal from Trial Term, New York County.

Eugene Clemente was convicted of manslaughter, and appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Samuel Wechsler, for appellant.

Robert C. Taylor, for respondent.

DOWLING, J.　The defendant has been convicted of the crime of manslaughter in the second degree, under the provisions of section 193, subd. 3, of the Penal Code (now section 1052, subd. 3, of the Penal Law [Consol. Laws 1909, c. 40]). This section defines homicide as manslaughter in the second degree when committed without a design to effect death "by any act, procurement or culpable negligence of any person, which, according to the provisions of this article, does not constitute the crime of murder in the first or second degree, nor manslaughter in the first degree."

The defendant was a licensed blaster and had been engaged in blasting for a period of about two months on the premises at the corner of Freeman street and Southern boulevard in the city of New York, when, on September 11, 1909, he set off a blast, the results of which were so extensive that rocks were scattered over the territory to the west of the plot on which he was working, three persons were struck thereby, and a boy who was standing on the stairway of the elevated station, from 125 to 140 feet distant, was struck by a piece of the rock projected therefrom with such violence that his skull was crushed in and part of his brains scattered on the subway stairs. The unusual violence of this explosion is not denied, and the only explanation sought to be made by the defendant is that the rock on which he was working had theretofore been soft rock, and his operations had been conducted without accident of any kind; but that without his knowledge the character of the ground in which this particular blast was operated was a deposit of hard rock, as the result of which, though using the same amount of powder as he had theretofore employed, it produced results far more violent than the prior ones. Defendant claimed that he had used about 2½ pounds of powder as a charge in each drill hole, while the testimony of the expert witnesses called by the prosecution agreed that the amount used in the holes in question must have been from 10 to 11 pounds, and that the reasonable and adequate amount of powder to place therein would have been 5 pounds. Accepting the testimony of the prosecution, as the jury did, that the defendant, conducting his blasting operations in rock on a Saturday afternoon, within the limits of a city, with persons within

the zone of his operations liable to suffer damage or death by reason of any carelessness or unskillfulness on his part, had placed in these drill holes double the amount of powder which careful use would require, as the result of which he had caused the death of a human being, the jury could not have reached any other conclusion save that he had been guilty of such culpable negligence as brought him within the provisions of the statute. The severity of the results produced is in itself the best evidence of the excessive force negligently applied, and we do not deem it necessary to do more than discuss the exceptions assigned as a ground for reversal.

[1] The defendant's admission that the results produced by this blast were so severe because he was working in hard rock instead of soft is an admission that too much powder was used for the kind of rock which he was then blasting; and his failure to so conduct his operations as to make the force applied proportionate to the nature of his work, when negligence in that respect would place in jeopardy the lives of others, is in itself gross carelessness and involves the doing of an act dangerous in itself without taking proper precautions to prevent danger arising therefrom; and when the death of a person results therefrom, even though there be no malice or evil design, the act is at least manslaughter. Wharton on Homicide (3d Ed.) p. 680.

[2, 3] It is sought to secure reversal of this judgment upon the ground that it was error to permit the propounding of hypothetical questions to two expert witnesses called by the prosecution. Their qualifications as experts having been established, they were asked to answer the following question, varying slightly in its form as put to each witness:

"Assume that a hole is 12 feet deep, 2½ inches in diameter at the bottom, 3½ inches in diameter at the top, and contains from the bottom up 36 inches of powder, 4 feet of tamping above that, and then 8 inches of powder and over that 3 to 4 feet of tamping, what, in your opinion, would you say would be the approximate amount of powder in that hole?"

Objection is made to this question on the ground, among others, that it involves an opinion based on the personal observation of the witness as well as the hypothetical conditions; but the question is not open to that objection. It is true that the court suggested an addition in these words:

"What in your opinion, assuming these facts to be true, and coupled with the result of your own observation after experience in blasting, would be the approximate amount of powder?"

But, when objection was made to this addition to the question by defendant's counsel, the court expressly said that he did not put it as a question but as a suggestion, and as a matter of fact the question in that form was not put or answered; and what the witness replied to was the original question quoted. This was a case peculiarly for expert testimony and one in which the knowledge of a layman would have been entirely inadequate to enable him to form an opinion as to the amount in weight of explosives in a hole, part of which was filled with tamping. Apart from the question of whether or not the defendant had properly protected his work, in order to prevent

rocks flying therefrom when the blasts were fired, the other important question was whether he had used an excessive and unsafe amount of powder for the work which was then being done and an amount disproportionate to the size of the hole which had been drilled therefor.

We are of opinion that the questions referred to offered proper subjects for expert opinion and were correct both in substance and form. The facts upon which the opinion evidence was founded were all assumed in the hypothetical question, which answers the requirements of the rule laid down in Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608. See, also, Weibert v. Hanan (June 6, 1911) 201 N. Y. ——, 95 N. E. 688.

[4] If, on cross-examination, it developed that the witness had relied in any way in arriving at a conclusion on personal observations not already testified to, it would of course have been competent then for the defendant to have moved to strike out his response to the hypothetical question, which in itself, however, conveyed no suggestion of any element to be considered in reaching a conclusion save those expressly included therein.

[5] Nor was the other question propounded to the expert witnesses, "Will you state from your knowledge as an experienced blaster what would be a reasonable and adequate amount of powder to place in these drill holes," for the diameter and depth of the holes had already been stated to them in the prior hypothetical question, to which this was immediately related.

[6] Nor were the jury superseded in their right of determining the question of whether or not the operations conducted by the defendant were safely conducted by him, for what the witnesses were called upon to give expert opinion concerning was (1) the amount of powder in the holes in question; (2) the reasonable and adequate amount thereof to place in these holes. If the jury credited their testimony as against that of the defendant, it was still for them to determine whether, conceding the testimony of the witnesses for the prosecution to be true, the disproportion between the amount of powder used and the amount adequate for the work to be done was so great as to constitute culpable negligence upon the part of the defendant.

[7] Nor was error committed in the admission of sections 61 and 62 of the rules of the Explosives Commission. These sections had to do with the amount of explosives to be used and the precautions required to be taken to guard the surface affected. They had been in effect since May 19, 1902, and the defendant as an experienced licensed blaster should have known of them and been aware of the regulations they established for safe blasting.

The admissibility of section 62 as some evidence of negligence and as suggesting what proper blasting should be was sustained in Burke v. City & County Contracting Co., 133 App. Div. 113, 117 N. Y. Supp. 400, and section 61 is admissible upon the same reasoning.

There is no other error assigned which, in our opinion, requires discussion; nor do we find any error sufficiently prejudicial to warrant a reversal of this conviction.

The judgment appealed from must therefore be affirmed. All concur.